IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 15, 2022

FILED

04/25/2022

Clerk of the
Appellate Courts

**STATE OF TENNESSEE v. NOAH CASSIDY HIGGINS**

**Appeal from the Circuit Court for Williamson County**
**No. J-CR200237     Deanna B. Johnson, Judge**

_____

**No. M2021-00281-CCA-R3-CD**

_____

Defendant, Noah Cassidy Higgins, pled guilty as a Range I standard offender to vehicular homicide by recklessness with the sentence to be determined by the trial court. Following a sentencing hearing, the trial court denied judicial diversion and probation and sentenced Defendant to five years' incarceration with a thirty percent release eligibility. Defendant appealed, arguing that the trial court: (1) improperly denied judicial diversion; (2) improperly denied probation; (3) considered facts outside the record; and (4) erred in applying and balancing certain enhancement and mitigating factors. Following our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Erik R. Herbert, Nashville, Tennessee, for the appellant, Noah Cassidy Higgins.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Kim Helper, District Attorney General; and Carlin Hess, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In June of 2020, Defendant was indicted by the Williamson County Grand Jury for vehicular homicide pursuant to Tennessee Code Annotated section 39-13-213(a)(1), aggravated assault, reckless endangerment, and reckless driving. Defendant entered a negotiated plea agreement and pled guilty to vehicular homicide with the other charges being dismissed. The plea agreement provided that Defendant could seek judicial

diversion, but if diversion was denied, the length of the Range I sentence and the manner of service would be determined by the trial court.

At the sentencing hearing, Brentwood Police Department ("BPD") Officer Brent Phelan testified that police dispatch notified him of an automobile accident involving personal injury around 7:10 p.m. on March 25, 2020. Dispatch informed Officer Phelan that the 911 caller was involved in the accident. The caller said that his vehicle left the road, striking a female bicyclist. Officer Phelan testified he was not the first officer to respond but arrived within two minutes of the accident. It was dusk, and there was some moisture on the road. Officer Phelan described the road as an undulating, two-lane road with a 35-miles-per-hour speed limit. A paved bike path ran parallel to the road. Behind the bike path, there was an "antebellum style rock wall" on the bordering property.

Officer Phelan observed a silver Nissan Maxima upside down on the bike path. Kelly Duggan, the deceased victim, was "slumped" against the rock wall with "the mangled remains of a silver bicycle [] underneath and behind her."

Officer Phelan testified that he spoke with Defendant at the scene. Defendant told him that he had turned off his traction control system in his car and that he lost control of the car when he went around the curve in the road. Defendant told him he likely exceeded the posted speed limit prior to crashing. Officer Phelan asked Defendant why he turned off the traction control, and he recalled Defendant saying that "he like[d] to hear the wheels spin a little." Officer Phelan said that Defendant seemed "very shaken up" but did not appear intoxicated or impaired. Defendant was cooperative and voluntarily submitted to an impairment examination. Officer Phelan testified that Officer Steve Holder conducted the test and found no evidence of impairment.

Officer Phelan obtained a search warrant to download the "event data recorder," commonly referred to as the "black box," of Defendant's vehicle. The black box recorded data five seconds before the airbags deployed and indicated that the vehicle was traveling at 87 miles per hour. The data indicated that Defendant overcorrected the steering wheel and that the car vaulted into the air and barrel rolled.

On cross-examination, Officer Phelan confirmed that Defendant was polite and "extremely remorseful" at the scene. Officer Phelan admitted that he did not recall Defendant's exact words regarding Defendant's statement, "I like to hear the wheels spin a little." On redirect examination, the State refreshed Officer Phelan's memory with a supplemental report from Officer Holder where Defendant said "he wanted to open [the car] up and hear the exhaust roar."

- 2 -

Several family members of the victim shared impact statements. The State read a letter from the victim's brother, Charles Duggan, which expressed his wish that the punishment for Defendant would deter others from committing similar crimes. Katherine Sanders, the victim's stepdaughter, testified as to the victim's impact on her life and noted that Defendant had not reached out to her family to apologize for his actions. Geoff Duggan, the victim's older brother, testified regarding the victim's life and accomplishments.

Brad Sanders, the victim's husband, testified that on March 25, 2020, he got "a very bad feeling" when his wife had not returned from her bike ride. He got in his truck, began driving, and soon after saw emergency vehicles. Police informed him of the incident, and he saw his deceased wife. He testified that he would have been more sympathetic towards Defendant if Defendant had been drunk or on drugs. However, Defendant acted with full cognition in driving 87 miles per hour in a residential area.

Defendant testified, apologizing to the victim's family and everyone who had cared for the victim. Defendant testified, "Driving now seem[s] like a nightmare." Defendant requested the court sentence him to three years' probation with an additional 500 hours of community service work.

Defendant testified that he was twenty-two years old and had no prior criminal history. He currently worked as a shift manager at a restaurant in Cool Springs. Defendant read a character testimony from his employer into the record. Defendant's employer described him as "one of [his] best hires[]" and a "natural born leader." Defendant's parents and girlfriend also wrote character testimonies that were admitted as exhibits. Defendant testified that he would learn from his mistakes and had already begun volunteering at a local hospital. An employee of the hospital wrote a letter based on her experience with Defendant over the past five months. She described him as "a special, caring person."

Defendant testified that on March 25, 2020, he clocked out of work around 7:00 p.m. and got in his car. Defendant claimed that he turned off the car's traction control because it "could help [] with fuel [economy.]" Defendant detailed the route he took home from work and explained that he lost control of his vehicle as the road curved up a steep hill. Defendant said, "I could not tell you the speed that I was going and I wasn't trying to take it for a joyride[.]" Defendant said that he realized he was driving too fast as he approached the bend in the road; he said that he overcorrected and did not recall "what really exactly happened after that[.]" Defendant remembered the car going airborne and barrell rolling. He punched out the airbag and exited the upside-down car. Defendant saw the victim and immediately realized she was not breathing. He proceeded to call 911.

Defendant testified that he knew what he did was wrong and that he wanted to cooperate with the police officers "110 percent."

Defendant testified that he was involved in a prior motor vehicle accident on October 9, 2019. He confirmed that he was not charged with any speeding violations stemming from that accident. Defendant explained that the accident occurred because of a faulty emergency brake system. Defendant testified that he had one prior instance of alcohol abuse but had not been intoxicated since 2017. Defendant said that since March 25, 2020, he had completed a driver improvement program with the Tennessee Department of Homeland Security along with several "generic online driving" courses.

On cross-examination, Defendant admitted to speeding 65 miles per hour in a 40-miles-per-hour zone in Brentwood, Tennessee, in December of 2016. When asked about the October 2019 car crash, Defendant claimed he was not speeding. Defendant admitted that in November 2019, he received a traffic citation for traveling 10 miles per hour over the speed limit of 70 or 75 miles per hour on a Texas interstate. Defendant admitted that he received a speeding ticket in Arkansas for traveling 85 miles per hour in a 70-miles-per-hour zone on February 15, 2020. Defendant affirmed that the financial penalties for his prior speeding infractions did not disincentivize him from speeding.

Regarding the March 25, 2020 crash, Defendant testified that he had driven on the road "a hundred times" and knew it very well. Defendant admitted that he did not know whether 87 miles per hour was the fastest he drove that day.

Upon hearing the evidence, the trial court found Officer Phelan's testimony credible. The court found that Defendant was remorseful and that he accepted responsibility for his actions. However, the court discredited Defendant's testimony that he disabled traction control for fuel economy and credited Officer Phelan's statement that Defendant said he liked how the engine sounded with traction control disabled. The court discredited Defendant's statement that he was not speeding during the 2019 car crash. The trial court applied as enhancement factors that Defendant had a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range and that Defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(1), (10) (2020). In mitigation, the court found that Defendant accepted responsibility for his actions, was remorseful, and was attempting to improve his life. Tenn. Code Ann. § 40-35-113(13) (2020).

The trial court recited the factors from *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998), and *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The trial court found Defendant not amenable to correction because of his history of speeding tickets and a prior car crash. The court noted that Defendant "had plenty of

- 4 -

financial incentive to stop speeding, to stop driving recklessly, but he didn't do so." The trial court found the circumstances surrounding this offense weighed against judicial diversion because Defendant had driven on this particular road for roughly four years and was aware of the 35-miles-per-hour speed limit. The court reasoned that Defendant knew it was a "wind[ing] country road," that people "were out and about," and nevertheless decided to drive 87 miles per hour. The trial court considered Defendant's lack of a criminal record as "not really applicable." In regards to Defendant's social history, the trial court sympathized with Defendant because Defendant moved many times during his childhood and his mother suffered from drug addiction.

Other than Defendant's drinking incident in college, the trial court did not find anything "particularly noteworthy" regarding Defendant's mental and physical health. The trial court found that the deterrence value to Defendant and other defendants and whether judicial diversion would serve the interest of the public weighed against judicial diversion. The trial court did not provide its reasoning in connection with those factors. In denying judicial diversion, the trial court stated, "So the Court has weighed all these factors, every one of them. The Court has weighed every one of these factors and finds that judicial diversion is not appropriate in this particular case."

The trial court considered alternative sentencing. It again emphasized Defendant's knowledge of the road and speed limit. The trial court found confinement necessary to avoid depreciating the seriousness of the offense and to deter others from committing similar offenses. The trial court denied probation and sentenced Defendant to five years' incarceration with a thirty percent release eligibility.

Defendant appeals.

*Analysis*

Defendant raises the following sentencing issues on appeal: (1) that the trial court erred in denying judicial diversion; (2) that the trial court erred in denying probation and in sentencing Defendant to incarceration; (3) that the trial court abused its discretion in considering "a fact not supported in the record"; and (4) that the trial court erred in applying enhancement factor (10) and in its balancing of the enhancement and mitigating factors. The State responds that the trial court properly sentenced Defendant.

## I.     *Judicial Diversion*

Defendant claims that the trial court improperly denied judicial diversion, arguing that this court should apply a de novo standard of review and overturn the trial court's decision. The State responds that the trial court's denial of judicial diversion was proper

and that its decision should be entitled to a presumption of reasonableness. We agree with the State.

A trial court "may defer further proceedings against a qualified defendant and place the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty and with the consent of the qualified defendant." Tenn. Code Ann. § 40-35-313(a)(1)(A) (2020). A defendant is a "qualified defendant" and eligible for judicial diversion if he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; has not been previously convicted of a felony or Class A misdemeanor for which a sentence of confinement has been served; has not been previously granted judicial or pretrial diversion; and is not seeking deferral for a sexual offense, a DUI, certain offenses against elderly or vulnerable adults, or vehicular assault. *See* Tenn. Code Ann. § 40-35-313(a)(1)(B)(i) (2020).

In this case, Defendant was eligible for judicial diversion because he pled guilty to vehicular homicide by recklessness, a Class C felony, had no prior felonies or Class A misdemeanors, and had not received diversion in the past. "Eligibility under the statute does not, however, constitute entitlement to judicial diversion; instead, the decision of whether to grant or deny judicial diversion is entrusted to the discretion of the trial court." *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014). In determining if a qualified offender should be granted judicial diversion, the trial court must consider the following common law factors:

> (a) The accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*Parker*, 932 S.W.2d at 958. "[T]he trial court must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *Electroplating, Inc.*, 990 S.W.2d at 229).

When the trial court considers the common law factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327. If "the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard, which merely looks for 'any substantial evidence' to support the trial court's decision, is

- 6 -

not appropriate." *Id*. In such case, this court will either conduct a de novo review or remand the case to the trial court for reconsideration. *Id.* at 328.

Here, the trial court began its judicial diversion analysis with a recitation of the *Parker* and *Electroplating* factors. The trial court specifically found that Defendant was not amenable to correction, noting that Defendant had been issued multiple speeding tickets and, therefore, "had plenty of a financial incentive to stop speeding, to stop driving recklessly, but he didn't do so." The court noted that Defendant was very familiar with the road on which the wreck occurred, having driven it from home to work and back for four and a half years. The court found that Defendant knew he was traveling on "a wind[ing] country road," where "people were out and about" and "riding bikes," but even knowing the route, Defendant sped through the area at 87 miles per hour in a 35-miles-per-hour speed zone. The court found that Defendant consciously drove recklessly and that the circumstances of the offense "weigh[ed] against him in a determination regarding judicial diversion." The court noted that, other than speeding tickets, Defendant did not have a criminal record. The court considered Defendant's social history in regard to his childhood but did not indicate the factor's weight. The court sympathized with Defendant's moving several times during childhood and his mother's drug addiction. Defendant's parents, girlfriend, employer, and volunteer supervisor wrote letters describing Defendant's positive attributes. The court found Defendant's mental and physical health not "particular[ly] noteworthy," noting that Defendant had one incident of alcohol abuse in college. However, the evidence indicated that Defendant was in good physical and mental health and that he worked at a restaurant and volunteered at a medical center. Without making specific factual findings, the court determined the deterrent effect of the sentence and the interest of the public both weighed against diversion. The court "also considered additional factors laid out in *State v. Washington*," 866 S.W.2d 950 (Tenn. 1993), including a "defendant's attitude, behavior since arrest, prior record, home environment, current drug usage, emotion stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement." The court stated that it "has weighed all these factors, every one of them" and "finds that judicial diversion is not appropriate in this particular case."

It is apparent from the findings of the trial court that it gave great weight to the circumstances of the offense and to Defendant's amenability to correction. The court determined that the deterrent effect of the sentence and the interest of the public also weighed against diversion.

In *King*, our supreme court explained:

Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to

- 7 -

obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*King*, 432 S.W.3d at 327.

The trial court considered all of the *Parker* and *Electroplating* factors. The court identified the specific factors it felt relevant and placed on the record its reasons for denying judicial diversion. We, therefore, apply a presumption of reasonableness, we determine that there was substantial evidence to support the trial court's decision, and we uphold the denial of judicial diversion.

## II. Probation

Defendant contends that the trial court erred in denying probation. The State responds that the trial court properly denied probation. We agree with the State.

When a trial court denies probation or any other alternative sentence to an eligible defendant and states on the record reasons that are in accordance with the purposes and principles of sentencing, the court's decision is reviewed under an abuse of discretion standard, accompanied by a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If the trial court fails to articulate the reasons for denying an alternative sentence, the "abuse of discretion standard with a presumption of reasonableness" does not apply on appeal and an appellate court can either (1) conduct a de novo review to determine whether there is an adequate basis for denying probation; or (2) remand for the trial court to consider the requisite factors in determining whether to grant probation. *See State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013).

Before imposing a sentence, the trial court is statutorily required to consider the following factors:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
(7) Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and
(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b) (2020). The trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e) (2020); *Bise*, 380 S.W.3d at 705. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10.

"A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less," with some exceptions. *See* Tenn. Code Ann. § 40-35-303(a) (2020). In determining whether confinement is appropriate, the trial court should consider the following principles:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2020). Additionally, the sentence imposed should be (1) "no greater than that deserved for the offense committed[,]" and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2), (4) (2020). The trial court may consider the *Electroplating* factors in determining whether to impose a sentence of probation. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citing *Electroplating, Inc.*, 990 S.W.2d at 229). To deny probation solely based upon the seriousness of the offense, the trial court must find that the circumstances of the offense, "as committed, must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation." *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991) (internal quotations and citations omitted).

Defendant mistakenly asserts that the trial court relied *solely* on the seriousness of the offense in denying Defendant's request for probation. Concerning the seriousness of the offense, the court stated that

> confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. In this case, the [c]ourt finds that both of those apply. . . . We've all heard the proof and we all feel for the family and, again, to point out the fact that [Defendant] drove this road twice a day for four and a half years, knew what was on this road. It was hilly, windy two-lane road, . . . and he drove this road knowing it was 35 miles per hour, knowing that people would be out, it's a neighborhood. We all saw the pictures. He drove 87 miles per hour and lost control and killed somebody. And to avoid depreciating the seriousness of the behavior, of that offense, confinement is necessary, and confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses.

The trial court also relied on Tennessee Code Annotated section 40-35-103(1)(C) in denying probation, finding Defendant not amenable to correction because of his history of speeding tickets and a prior car crash. The trial court stated on the record reasons to deny an alternative sentence that were in accordance with the purposes and principles of sentencing. We determine that the trial court did not abuse its discretion in denying Defendant's request for probation.

### III.    Consideration of Facts Outside the Record

Defendant argues that the trial court improperly considered facts outside of the record when it considered his prior car crash. The State responds that the trial court did not abuse its discretion in considering Defendant's prior car crash.

The presentence report contained information regarding Defendant's prior crash in October 2019, and Defendant testified regarding the accident. When asked whether the 2019 crash was similar to the crash in this case, Defendant replied, "Yes, sir." Defendant confirmed it happened on a winding two-lane road. Defendant testified, "[]I wasn't speeding or -- I just kind of wanted to get out of the house and, you know, get -- get some air." When asked how he crashed, Defendant said, "I simply was driving. I had both my hands on the wheel. The [dashboard] light popped on. I looked down, and when I looked up it was -- the road was turning and I'm still going straight." The 2019 crash report indicated Defendant overcorrected the steering wheel.

- 10 -

The trial court found Defendant's testimony not credible regarding his statement that he was not speeding when he crashed in 2019. The court discredited Defendant's explanation of the 2019 accident and said, "The court believes [Defendant] was speeding on that wind[ing] country road, similar to the incident which brings us here today, unfortunately." Defendant misinterprets "facts not in the record" with the trial court's ability to make credibility determinations. The trial court's statement that Defendant was speeding in the 2019 crash was based on its interpretation of Defendant's testimony. Regardless, the trial court only referenced Defendant's speeding in the 2019 crash during its application of enhancement factor (1). In applying this factor, the trial court also relied on Defendant's three prior speeding tickets. When the trial court analyzed Defendant's amenability to correction, it referenced the 2019 crash generally. The trial court properly considered the evidence, and Defendant is not entitled to relief on this issue.

## IV.     *Enhancing and Mitigating Factors*

Defendant argues that the trial court erred in applying enhancement factor (10) and in sentencing Defendant to five years' incarceration with a thirty percent release eligibility. The State responds that the trial court properly sentenced Defendant. We agree with the State.

When a defendant challenges the length, range, or manner of service of a within-range sentencing decisions, this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness if the record reflects the trial court properly applied the purposes and principles of the Sentencing Act. *Caudle*, 388 S.W.3d at 278-79; *Bise*, 380 S.W.3d at 708.

The trial court applied enhancement factor (10), that Defendant had no hesitation about committing a crime when the risk to human life was high, because Defendant drove 87 miles per hour and "knew that people were around[.]" *See* Tenn. Code Ann. § 40-35-114(10) (2020). The record indicates that Defendant drove 87 miles per hour in a residential area at dusk. The trial court stated, and we agree, that "[Defendant] knew there was that big park right there where people would be walking, riding their bikes, doing that sort of thing." We conclude that the trial court properly applied enhancement factor (10).

The trial court also correctly applied enhancement factor (1) based on Defendant's three prior speeding tickets. *See* Tenn. Code Ann. § 40-35-114(1) (2020) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"). The trial court applied mitigating factor (13) because Defendant accepted responsibility for his actions and was remorseful. *See* Tenn. Code Ann. § 40-35-113(13) (2020). The trial court commended Defendant for attempting to improve his life and recognized Defendant's volunteer work at the medical

center.  However, it was within the trial court's discretion to apply greater weight to enhancement factors (1) and (10) and to sentence Defendant to five years' incarceration with a thirty percent release eligibility.  The trial court did not abuse its discretion in fashioning Defendant's sentence.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE